CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

TAYLOR LORD (NJBN 379702022)
Special Assistant U.S. Attorney

JEFFREY D. NEDROW (CABN 161299)
Assistant United States Attorney

    60 S. Market Street, Suite 1200
    San Jose, California 95113
    Telephone: (408) 535-5045
    FAX: (408) 535-5066
    jeff.nedrow@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>  v.<br><br>FRANCISCO DE-JESUS MORALES,<br><br>    Defendant. | CASE NO. CR 5:25-mj-70598 MAG<br><br>UNITED STATES' MOTION FOR DETENTION |

## I.    INTRODUCTION

The United States has charged Defendant Francisco De-Jesus Morales with a violation of 18 U.S.C. §§ 111(a)(1) and (b), assault on a federal officer inflicting bodily injury. Francisco Morales (hereafter "Morales" or "Defendant") is scheduled to make his initial appearance on Wednesday, June 4, 2025. The United States herein files its motion for the pretrial detention of Morales. Morales's conduct demonstrates that he presents both a flight risk and a danger to the community if released. There is no

CR 5:25-MJ-70598 MAG

1

condition or combination of conditions that can secure his appearance before the Court or provide for the safety of the community. The government respectfully requests that he be detained pending trial.

**II.  FACTS**

**Background**

Morales is a 25-year-old citizen of Nicaragua without legal status in the United States. U.S. Border Patrol agents initially encountered Morales on November 1, 2022, in Eagle Pass, Texas. Thereafter, on November 4, 2022, ICE records indicate that Morales was released under an ICE Alternatives to Detention program which allowed him to remain out of custody while navigating his immigration proceedings.  Morales was given a cellphone and instructed to use it to check in with ICE while he was on release.  Morales was administratively charged by ICE as an alien present in the United States without lawful status and as an immigrant without an immigration visa.  Morales has no history of prior criminal convictions.

Morales was generally successful in complying with his release conditions throughout most of his time on release.  In April and June 2024, ICE attempted to verify Morales's current address and phone number for the purpose of sending him a notice to appear in Immigration Court.  On June 28, 2024, Morales responded to ICE and confirmed that the address ICE had on file was correct.  The address confirmed as accurate by Morales was on San Fernando Street in downtown San Jose.

On March 3, 2025, a United States Immigration Judge issued a final order of removal for Morales following a hearing in Immigration Court in San Francisco.  According to ICE records, Morales failed to appear at this hearing, and the Immigration Judge entered a final order of removal for Morales in absentia.  Morales has since claimed in a filing in Immigration Court that he did not receive notice of the March 3 hearing, as he was residing at a different address in San Jose in 2025.

On May 1, 2025, an authorized immigration officer with ICE issued an I-205 warrant providing for Morales's removal and deportation from the United States.  On that same date, ICE ERO, through a

contractor, contacted Morales and asked him to report to an ICE ERO facility on Blossom Hill Road in San Jose for the purpose of turning in the cellphone that ICE had provided him. Morales agreed to do so.

**Morales's Assault on ICE ERO officers on May 2, 2025**

On May 2, 2025, Morales reported to the Blossom Hill facility. Morales checked in at the facility and self-identified to an ICE ERO officer. Thereafter, ICE ERO officers attempted to take Morales into custody on the I-205 warrant for removal. Morales violently resisted arrest and attempted to flee from the deportation officers, resulting in an extended physical struggle between Morales and three deportation officers that spilled from a conference room onto the floor of a hallway. While the deportation officers ultimately restrained Morales, the deportation officers and Morales all sustained injuries during the physical altercation. The deportation officers' injuries included bruising, scrapes, an ankle stress fracture/strain, a chest contusion, and a groin injury.

Morales intentionally struck or grabbed ICE ERO officers on at least two occasions during the incident. Morales forcibly squeezed, twisted, and pulled the genitals of one of the deportation officers, causing significant bruising. Morales also swung his elbow forcibly towards another ICE ERO officer and struck him in the side, causing him to stumble and lose his balance. All three deportation officers sought medical care following the incident, and two of the officers missed work for several days as they recovered from the injuries they sustained while detaining Morales.

### III.   LEGAL STANDARD

Under the Bail Reform Act of 1984, the Court must detain a defendant before trial without bail where "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1). Detention is appropriate where a defendant is either a danger to the community or a flight risk; the government need not prove that both factors are present. *United States v. Motamedi*, 767 F.2d 1403, 1406 (9th Cir. 1985).

A defendant's danger to the community must be supported by clear and convincing evidence, but a defendant's flight risk need only be supported by a preponderance of the evidence. *Id.*

"[T]he Bail Reform Act mandates an individualized evaluation guided by the factors articulated in [18 U.S.C.] § 3142(g)." *United States v. Diaz-Hernandez*, 943 F.3d 1196, 1199 (9th Cir. 2019). Those factors are: (i) the nature and circumstances of the offense charged; (ii) the weight of the evidence against the defendant; (iii) the history and characteristics of the defendant, including his character, physical and mental condition, family and community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings, as well as whether the crime was committed while the defendant was on probation or parole; and (iv) the nature and seriousness of the danger to any person or to the community that the defendant's release would pose. *See* 18 U.S.C. § 3142(g); *United States v. Winsor*, 785 F.2d 755, 757 (9th Cir. 1986).

### IV.  ARGUMENT

**A.  Morales Should be Detained as a Flight Risk and a Danger to the Community**

The United States submits that Morales should be detained, because there are no conditions or combination of conditions the Court could impose that will reasonably assure the safety of the community or the appearance of Morales at further proceedings before this Court.

**(1) The Nature and Circumstances of the Offense Charged.**

Morales is charged with a serious offense, an assault on a federal officer that inflicted bodily injury.  When ERO officers attempted to detain him, he used force to avoid apprehension and attempted to flee the ICE facility.  He struck one officer with his elbow and grabbed another officer by the genitals.  His conduct reflects an intent to injure those officers.  Indeed, Morales's physical efforts to resist were so pronounced that three ERO officers were required to restrain him after a protracted struggle.  All three of those officers suffered injuries that required medical attention, and two of the injured officers missed work for several days due to their injuries.

In sum, Morales engaged in ongoing, directed violence towards federal officers with an intent to injure them, and his behavior demonstrated a blatant disregard for the law. The nature and circumstances of this conduct strongly supports a finding that no conditions of release will protect the community. Furthermore, it is difficult to see how someone willing to engage in violent conduct to avoid complying with the lawful orders of a federal court and federal law enforcement officers could be viewed as a person likely to voluntarily comply with orders of this Court if granted pretrial release. Accordingly, this factor weighs heavily in favor of detention.

**(2) The Weight of Evidence Against the Person.**

Substantial evidence supports the conclusion that Morales poses a threat to the community and will be a risk of non-appearance if he is released from custody. Morales's violent actions impacted three ERO officers, all of whom provided statements regarding Morales's conduct. Furthermore, Morales's intense efforts to resist apprehension occurred in the presence of other contract and clerical workers at the Blossom Hill ICE facility. While the government acknowledges Morales may contest some of the government's specific factual allegations, he cannot reasonably dispute, at a minimum, that he forcibly resisted arrest and that his efforts in doing so resulted in an extended physical struggle that caused injuries to those directly involved. The weight of the evidence thus strongly supports a finding that no bail conditions will either protect the community or reasonably assure that Morales will appear at future court appearances if released.

**(3) ) History and Characteristics of the Person.**

As noted above, Morales is a citizen of Nicaragua who is subject to deportation. An Immigration Court has entered a final order for his removal from the United States. Morales has been in ICE ERO custody since the May 2 assault pending deportation and will be brought before this Court for his initial appearance directly from ICE ERO custody.

The government understands that Morales told government officials that he was a laborer when they encountered him in Texas in November 2022, and that he provided ICE ERO with information that he works in landscaping. Morales's employment status at the time of his detention is unclear. As to residency, Morales confirmed the accuracy of an address on San Fernando Street in downtown San Jose in a communication with ICE ERO in June 2024, but the government understands that Morales has now asserted in an Immigration Court filing that he was residing at a different address south of downtown San Jose at the time of his missed removal hearing in March 2025. Morales further claims that he did not properly receive notice of the missed removal hearing based on the address discrepancy and has filed a motion to re-open proceedings in Immigration Court.

The uncertainty regarding Morales's residence, along with his efforts to avoid apprehension, his failure to appear at his deportation hearing, and the fact that he is subject to a final deportation order, all suggest that he will be a serious flight risk if released from custody. Based on the currently available information, consideration of Morales's personal history and circumstances weighs in favor of detention.

**(4) Nature and Seriousness of the Danger to Community.**

Morales has demonstrated that he will present a threat to public safety if he is released. A person who is willing to attack and injure federal officials in the course of their duties constitutes a significant danger to the community. Morales refused to submit when the deportation officers attempted to calmly detain him in a low-key manner. Instead, he elbowed one officer, engaged in an intense and physical struggle when a second officer joined the fray, and then continued to physically resist arrest and forcibly grabbed the genitals of a third officer who tried to help restrain him. These facts demonstrate Morales's disregard for the rule of law and suggest that he will not be likely to comply with conditions of release. It is worth considering that the strength of Morales's determination to resist apprehension was such that it took three officers to finally detain him. It seems unlikely that someone so committed to taking a violent course of action to avoid detention will comply with the Court's orders if released.

CR 5:25-MJ-70598 MAG

It is also unlikely that Morales will voluntarily appear before the Court for further proceedings if he is released on a bond. Morales failed to appear for the most important hearing in his immigration proceedings, his March 3 removal hearing. Morales is facing a potential prison sentence if convicted of the assault crime with which he is charged. Releasing Morales from custody, even with strict conditions, will not mitigate the danger he poses to the community and the risk he would flee. Release conditions always depend, at least in part, on voluntary compliance. Morales's demonstration of intense, violent resistance to law enforcement strongly supports a finding that no conditions of release will protect the community or reasonably assure his future court appearances in this case.

**V. CONCLUSION**

Pretrial detention is necessary in this case to assure the safety of people and the community, and the appearance of the defendant as required. 18 U.S.C. § 3142(f). There is clear and convincing evidence that the defendant would pose a danger to the community if released, and that there are no release conditions or combination of conditions that would assure the safety of the community. The facts further support the conclusion, by a preponderance standard, that the defendant would be a flight risk and would not appear at trial as required.

For the foregoing reasons, the government respectfully requests that the Court order Morales detained pending trial in this case.

Respectfully submitted,

CRAIG H. MISSAKIAN
United States Attorney

TAYLOR LORD
Special Assistant U.S. Attorney

*Jeffrey D. Nedrow*

JEFFREY D. NEDROW
Assistant United States Attorney